BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

JAIME A. SCOTT
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-3620
Jaime.A.Scott@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD ANOOSH AZIZI, *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *et. al.*,[1]<br><br>Defendants. | Case No: 2:24-cv-02959-JDP<br><br>**BRIEF SUPPORTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |

---

[1] Under Fed. R. Civ. P. 25(d), when a public officer who is a party in an official capacity "ceases to hold office," the officer's successor is "automatically substituted as a party" in the pending action.

MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................1

LEGAL BACKGROUND .........................................................................2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................6

ARGUMENT .......................................................................................8

I.   The Court should Dismiss the Complaint Under Rule 12(b)(1) ....................8

A.   Plaintiffs lack standing because they either have no protected legal interest in entry into the United States and thus have suffered no legal injury, or an injury has not yet occurred that is ripe for suit. ..................................................8

B.   Parole adjudications are subject to agency discretion under 8 U.S.C. § 1182(d)(5)(A) and are thus unreviewable by the judiciary. ...............................13

C.   Intermediate steps in the parole process are subject to agency discretion and are not "final actions," making them unreviewable by the judiciary. ........17

D.   Plaintiffs' lack standing to assert their FOIA claim because the request was not submitted on behalf of Plaintiffs, nor was it asserted against the correct Defendant...................................................................................................19

II.  The Court should Dismiss the Complaint Under Rule 12(b)(6). ..................21

A.   Plaintiffs' allegations of "new standards" imposed by Defendants to Afghan parole decisions merely describe existing standards and thus raise no legal claim...................................................................................................21

i.   The first alleged "new standard" describes an existing regulation to administer travel documents to parole applicants at a U.S. embassy or consulate. .................................................................................................22

ii.  The second alleged "new standard" describes a pre-existing statutory limitation to only issue parole based on "urgent humanitarian interests or significant public benefit." ............................................................................24

iii. The third alleged "new standard" points to no change in prior policy and is nonetheless discretionary............................................................................25

iv.  Even if the alleged new rules were of a nature that required notice-and-comment, the Foreign Affairs exception would apply.....................................26

v.   Following the parole statute as written is not "impermissible.".............28

B.   Plaintiffs' claims fail because the purported delay since the parole applications were submitted is not unreasonable. .............................................29

CONCLUSION ....................................................................................32

# <u>TABLE OF AUTHORITIES</u>

Page(s)

### Cases

*A Better Way for BPA v. U.S. Dep't of Energy Bonneville Power Admin.*,
  890 F.3d 1183 (9th Cir. 2018) ..........................................................................6, 19

*Al-Atri v. Lugo*,
  No. 1:20-CV-01556-JLT-EPG, 2024 WL 5238900 (E.D. Cal. Dec. 27, 2024)...15

*Amanullah v. Nelson*,
  811 F.2d 1 (1st Cir. 1987) ...................................................................................29

*Bettwieser v. Gans*,
  715 F. App'x 767 (9th Cir. 2018) ........................................................................20

*Bian v. Clinton*,
  605 F.3d 249 (5th Cir. 2010) ...............................................................................16

*Biden v. Texas*,
  597 U.S. 785 (2022) .............................................................................................14

*Bouarfa v. Mayorkas*,
  --- S.Ct. ----, 2024 WL 5048700 (2024).............................................................14

*Cheejati v. Blinken*,
  106 F.4th 388 (5th Cir. 2024)..............................................................................15

*City of N.Y. v. Perm. Mission of India*,
  618 F.3d 172 (2d Cir. 2010) ................................................................................27

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020).........................................................................................11

*Dep't of Homeland Security v. Thuraissigiam*,
  591 U.S. 103 (2020) ...............................................................................................9

*Drake v. Obama*,
  664 F.3d 774 (9th Cir. 2011) ...............................................................................20

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ......................................................................... 26, 27

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) .............................................................................................11

*FCC v. Fox Television Stations*,
  556 U.S. 502 (2009) .............................................................................................28

*Gerhart v. Lake Cnty., Mont.*,
  637 F.3d 1013 (9th Cir. 2011) .............................................................................12

*Haydary v. Garland*,
  No. 4:24 CV 836 JMB, 2024 WL 4880406 (E.D. Mo. Nov. 25, 2024)..............15

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........................................................................14
*Iddir v. I.N.S.*,
301 F.3d 492 (7th Cir. 2002) ...........................................................16
*Indep. Mining Co. v. Babbitt*,
105 F.3d 502 (9th Cir. 1997) ............................................................8
*INS v. Stevic*,
467 U.S. 407 (1984) ........................................................................29
*Kangarloo v. Pompeo*,
480 F.Supp.3d 134 (D.D.C. 2020)......................................................8
*Kerry v. Din*,
576 U.S. 86 (2015) ...........................................................................9
*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ..........................................................................9
*Kucana v. Holder*,
558 U.S. 233 (2010) ........................................................................14
*Liu v. Novak*,
509 F. Supp. 2d 1 (D.D.C. 2007)......................................................16
*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003).......................................................30
*Roe v. Mayorkas*,
No. 22-cv-10808-ADB, 2023 WL 346637 (D. Mass. May 12, 2023) .... 11, 18, 28
*S.A. v. Trump*,
363 F. Supp. 3d 1048 (N.D. Cal. 2018).......................................... 12, 13
*SAE Prods., Inc. v. F.B.I.*,
589 F.Supp.2d 76 (D.D.C. 2008).....................................................19
*Shihuan Cheng v. Baran*,
No.CV 17-2001-RSWL-KSx, 2017 WL 3326451 (C.D. Cal. Aug. 3, 2017) ......18
*Singh v. Napolitano*,
909 F.Supp.2d 1164 (E.D. Cal. 2012) ..............................................31
*Sosa v. Barr*,
369 F. Supp. 3d 492 (E.D.N.Y. 2019)..............................................18
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................................................................8
*Telecommunications Research & Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)...........................................................30
*Thigulla v. Jaddou*,
94 F.4th 770 (8th Cir. 2024)............................................................15
*Trump v. Hawaii*,
585 U.S. 667 (2018) .....................................................................8, 10

*Trump v. Int'l Refugee Assistance Project*,
  582 U.S. 571 (2017) ...................................................................................9, 10
*United States ex. ex. Rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950)...........................................................................................9
*Uranga v. U.S. Citizenship & Immigr. Servs.*,
  490 F. Supp. 3d 86 (D.D.C. 2020).................................................................16
*Vaz v. Neal*,
  33 F.4th 1131 (9th Cir. 2022) .....................................................................8, 30
*Vaz v. Neal*,
  No.2:20-CV-00316-KJD-NJK, 2021WL117295933Z (D. Nev. Mar. 26, 2021).30
*Yassini v. Crosland*,
  618 F.2d 1356 .................................................................................................26
*Ziae v. Garland*, No. 3:24-cv-1122-S-B,
  T, 2024 WL 5173318 (N.D. Tex. Dec. 19, 2024) .............................................15

## Statutes

5 U.S.C. § 552(a)(3) .............................................................................................5
5 U.S.C. § 552(a)(6)(A)(i) ....................................................................................5
5 U.S.C. § 552(a)(6)(B)(i) .....................................................................................5
5 U.S.C. § 553 .....................................................................................................21
5 U.S.C. § 553(a)(1) ............................................................................................26
5 U.S.C. § 701(a) ........................................................................... 2, 13, 16, 17
5 U.S.C. § 702 .....................................................................................................16
5 U.S.C. § 706(2)(A)............................................................................................28
8 U.S.C. § 1182(d)(5)(A) ............................................................................ passim
8 U.S.C. § 1252 ........................................................................................... 15, 16
Pub. L. No. 107-296,§ 402, 116 Stat. 2135, 2178 (2002)...........................................3

## Rules

Fed. R. Civ. P. 25(d) ............................................................................................0

## Regulations

8 C.F.R. § 212.5 ......................................................................................... 3, 4, 23
8 C.F.R. § 212.5(f) ..................................................................................... 21, 22
8 CFR 103.2(b)(8)................................................................................................18

## Other Authorities

Humanitarian or Significant Public Benefit Parole for Noncitizens Outside the
  United States, U.S. Citizenship and Immigr. Servs.,
  https://www.uscis.gov/humanitarian/humanitarian_parole (last updated Jan. 24,
  2025). .................................................................................................... 3, 4, 23, 25
*Information for Afghan Nationals on Requests to USCIS for Humanitari*AN
  PAROLE, U.S. CITIZENSHIP AND IMMIgr. Servs.,
  https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-
  parole-for-noncitizens-outside-the-united-states/information................... 5, 19, 22
USCIS Policy Manual vol. 1, pt. E, ch. 6.F, https://www.uscis.gov/policy-
  manual/volume-1-part-e-chapter-6............................................................. 18, 25

# **INTRODUCTION**

The Court should dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as Plaintiffs lack standing to raise their claims, their claims are unreviewable under the Administrative Procedure Act ("APA"), their claims do not allege any new standards by Defendants in parole adjudications, and, even if their claims were reviewable, there has been no unreasonable delay. Plaintiffs are U.S. citizens and Afghan nationals who have pending applications for parole filed with U.S. Citizenship and Immigration Services ("USCIS"). They raise APA claims challenging an alleged change of standards by USCIS in the adjudication of Afghan parole applications after August 31, 2021, resulting in categorical denials and the non-issuance of Requests for Evidence ("RFEs") or Notices of Intent to Deny ("NOIDs"). They also claim that USCIS has unreasonably delayed adjudicating Plaintiffs' pending parole applications. Plaintiffs ask the Court to set aside USCIS' alleged "heightened adjudication standard for Afghan humanitarian parole" and adjudicate Plaintiffs' parole applications in accordance with USCIS standards in effect on August 31, 2021.

Defendants have received an unprecedented number of humanitarian parole applications since the U.S. troop withdrawal from Afghanistan in August 2021 and have poured resources into adjudicating parole requests as quickly as possible. However, the crisis in Afghanistan and heightened interest in parole across all

1

nationalities do not give Plaintiffs' a cause of action. As such, Plaintiffs' claims fail for a variety of reasons. First, all Plaintiffs lack standing because they either have no protected legal interest in entry into the United States and therefore have suffered no cognizable legal injury as a result of alleged delayed adjudications, or there is no injury that is yet ripe for suit. Second, parole determinations are precluded form judicial review under 5 U.S.C. § 701(a)(1) and (2) because they are subject to agency discretion under 8 U.S.C. § 1182(d)(5)(A) and expressly precluded from judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii). Third, intermediate steps in the parole adjudication process are unreviewable by the judiciary because they are within Defendants' discretion and are not "final" agency action. *See* 5 U.S.C. §§ 701(a)(2), 704. Fourth, Plaintiffs' allegations of "new standards" imposed by Defendants to Afghan parole decisions merely describe existing standards and thus raise no legal claim. Fifth, even assuming Plaintiffs have standing and a cause of action, the alleged delay is not unreasonable. Finally, Plaintiffs allege violation of the Freedom of Information Act ("FOIA"); however, their claim fails because the request was not submitted on behalf of the Plaintiffs in this litigation nor against the correct Defendants.

## LEGAL BACKGROUND

Plaintiffs challenge the policies, procedures, and delays related to "humanitarian parole," which is a colloquial term sometimes used for the parole

MOTION TO DISMISS

authority vested with the Secretary of Homeland Security under 8 U.S.C. § 1182(d)(5)(A).[2] This section provides that "[t]he Attorney General may. . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5. Parole permits an individual to come to or remain in the United States for a temporary period, but parole does not constitute an "admission" to the United States, nor does it confer any immigration status. 8 U.S.C. § 1182(d)(5)(A).[3] No statute or regulation requires USCIS to consider individuals for parole or to ever grant a parole request; however, USCIS permits anyone, anywhere in the world, to apply for parole on behalf of a noncitizen outside the United States, or a noncitizen outside the United States may apply for parole on their own behalf, by filing a Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records.[4] *Supra* n.3. Additionally, no statute or

---

[2] The statute refers to the Attorney General; however, in 2022, Congress transferred enforcement of immigration laws to the Secretary of Homeland Security ("Secretary") under the Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002).

[3] For more information about humanitarian parole requests adjudicated by USCIS, *see Humanitarian or Significant Public Benefit Parole for Noncitizens Outside the United States*, U.S. CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian_parole (last updated January 24, 2025).

[4] At the time Plaintiffs filed their Form I-131s with USCIS, the Form I-131 was known as the "Application for Travel Document." An updated Form I-131 was

regulation defines 8 U.S.C. § 1182(d)(5)(A)'s "urgent humanitarian reasons or significant public benefit" terminology, providing the Department of Homeland Security ("DHS") with extensive discretion over who meets parole criteria. *Id.*

USCIS officers adjudicate parole requests like those submitted by Plaintiffs on a "case-by-case" basis to determine if parole is appropriate in the totality of the circumstances. *Id.* As part of that process, officers may issue RFEs or NOIDs. *Id.* USCIS provides notice of the decision to the parole requestor, and if conditionally approved, to a U.S. embassy or consulate typically closest to the beneficiary's residence. *Id.* Conditionally approved beneficiaries must then complete a Form DS-160, Application for a Nonimmigrant Visa, and appear for an appointment with a Department of State consular section to verify their identity and collect biometrics for additional security screening. *Id.* If vetting is passed successfully, the U.S. embassy or consulate will issue travel documents to the beneficiaries on USCIS' behalf. The travel document does not guarantee parole, but permits beneficiaries to travel to the United States and serves as evidence that USCIS has authorized parole. *Id.*; 8 C.F.R. § 212.5(f). U.S. Customs and Border Patrol ("CBP") officers inspect the beneficiary at a port of entry and make a discretionary determination whether to grant parole at the port of entry. If CBP paroles the beneficiary, CBP will issue

---

published on October 11, 2024 (June 17, 2024 edition) and renamed "Application for Travel Documents, Parole Documents, and Arrival/Departure Records."

MOTION TO DISMISS

documentation to the beneficiary indicating the length of the parole period and allow them to come into the United States.

In August 2021, U.S. Embassy Kabul suspended operations, making it impossible for USCIS to fully process parole applications for individuals located in Afghanistan.[5] Therefore, applicants currently located in Afghanistan will either receive a denial notice or, for those who initially appear eligible for parole, a Notice of Continued Parole Processing explaining that parole beneficiaries applicants must arrange their own travel to a country with a U.S. embassy or consulate to continue the parole application process. *See supra* n.5. There is currently an extremely high number of parole requests causing adjudications to take longer than pre-Fall 2021 timeframes. *Id.*

Plaintiffs also allege that Defendants failed to conduct an adequate search of records under FOIA, which requires agencies to make reasonable efforts to search for records requested in accordance with agency rules. 5 U.S.C. § 552(a)(3). An agency must determine within 20 working days after receipt of a request whether to comply with the request, *see* 5 U.S.C. § 552(a)(6)(A)(i), although this timeline can be expanded in unusual circumstances. 5 U.S.C. § 552(a)(6)(B)(i). When a FOIA

---

[5] *Information for Afghan Nationals on Requests to USCIS for Humanitarian Parole*, U.S. CITIZENSHIP AND IMMIGR. SERVS., https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-parole-for-noncitizens-outside-the-united-states/information-for-afghan-nationals-on-requests-to-uscis-for-parole (last updated Oct. 11, 2024).

MOTION TO DISMISS

request is not properly completed, the requestor has standing to bring an action. *See, e.g.*, *A Better Way for BPA v. U.S. Dep't of Energy Bonneville Power Admin.*, 890 F.3d 1183, 1186 (9th Cir. 2018) ("Under FOIA, anyone whose *request* to an agency for records has been denied has standing to bring an action.") (internal quotations omitted) (emphasis added).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On October 28, 2024, Plaintiffs filed a seven count Complaint centered around an alleged change in policies and procedures by Defendants regarding Form I-131 parole applications filed on behalf of Afghan nationals. *See* Compl. Plaintiffs consist of three U.S. Citizens and their eight Afghan family members. *Id.* Mohammad Anoosh Azizi is a U.S. citizen who applied for parole in September 2021 for his family members Mohammad Walid Azizi and Nargis Ghafoori, and later in December 2023 for their children Shahram Mohammad Azizi and Asayesh Azizi. *Id.* ¶ 68–70. Soraya Azizi filed parole applications for relatives Azizalrahaman Rahmani, Behesta Rahmani, and Husna Rahmani in September 2021. *Id.* ¶ 74. Muzghan Ali filed a parole application for his relative Shadab Shahab in October 2021. *Id.* ¶ 77. The eight Form I-131 parole applications pending parole applications have not been adjudicated as of the date of the filing of the Complaint. *Id.* ¶ 68, 70, 74, 77.

MOTION TO DISMISS

On April 5, 2024, Plaintiffs' counsel submitted a FOIA request for data and statistics related to Afghan humanitarian parole approvals, denials, NOIDs, RFEs, fee waivers, and filing fees. *Id.*, Ex. A at 5. This request also sought information on "guidance, policies, directives, training materials, and similar documents" regarding fee waiver requests of Afghan parole applicants. *Id.* In this request, Plaintiffs' counsel, Prerna Lal, also sought a fee waiver as a member of the media by virtue of their online blog. *Id.*, Ex. A at 6. Alternatively, Lal sought a fee waiver as an "educational or non-commercial scientific institution" because of their position as a Lecturer at University of California, Berkeley. *Id.*, Ex. A at 7.

Plaintiffs allege that Defendants violated the APA by "implement[ing] new standards used to adjudicate requests for humanitarian parole on behalf of Afghans" to arbitrarily and capriciously "mak[e] it all but impossible for Afghan beneficiaries" to be granted parole under 8 U.S.C. § 1182(d)(5)(A) (Count I), substituted agency policy in violation of the APA for "a categorial rule refusing to approve Afghan humanitarian parole applications for Afghan nationals located in Afghanistan" and "failed to adhere to its own policies, including for issuing RFEs and/or NOIDs" (Count II), and did so without conforming to the APA's notice-and-comment requirements (Count III). Plaintiffs also request a related declaratory judgment (Count VI). Further, Plaintiffs allege that Defendants unreasonably delayed the parole applications of the eight Plaintiffs who are Afghan beneficiaries (Count IV)

7

and seek mandamus relief compelling Defendants to adjudicate these applications (Count V).[6] Finally, Plaintiffs allege violation of FOIA for Defendants' alleged failure to complete a reasonable search for records related to the request (Count VII).

## ARGUMENT

### I.    The Court should Dismiss the Complaint Under Rule 12(b)(1)

#### A. Plaintiffs lack standing because they either have no protected legal interest in entry into the United States and thus have suffered no legal injury, or an injury has not yet occurred that is ripe for suit.

Federal district courts only have constitutional authority to resolve cases or controversies in which Plaintiffs have standing. *See* U.S. CONST. Art III, § 2. To establish standing, a plaintiff must show she or he "'personal[ly]' suffered a concrete and particularized injury in connection with the conduct about which he complains." *Trump v. Hawaii*, 585 U.S. 667, 697 (2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). To determine "whether an intangible harm constitutes injury in fact, . . . it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit…." *Spokeo*, 578 U.S. at 340–41. Here, Plaintiffs Mohammad Walid Azizi, Nargis Ghafoori, Shahram Mohammad Azizi, Asayesh Azizi, Azizalrahamn

---

[6] These claims effectively collapse into one another, as "mandamus relief and relief under the APA are 'in essence' the same." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (quoting *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997); *Kangarloo v. Pompeo*, 480 F.Supp.3d 134, 142 (D.D.C. 2020) ("The standard for undue delay under the Mandamus Act … is identical to the APA standard.").

MOTION TO DISMISS

Rahmani, Behesta Rahmani, Husna Rahmani, and Shadab Shahab (hereinafter called "Afghan Plaintiffs") lack standing.

An unadmitted, nonresident foreign national does not have a right to entry into the United States and therefore no cause of action to bring suit based on a legal injury. *Kerry v. Din*, 576 U.S. 86, 88 (2015) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("It is clear that…an unadmitted and nonresident alien [] ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise."); *Trump v. Int'l Refugee Assistance Project ("IRAP")*, 582 U.S. 571, 581 (2017) (…the courts…did not conclude that exclusion in such circumstances [where individuals have no connection to the United States] would impose any legally relevant hardship on the foreign national himself."); *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("…Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause."). The Court has further explained that "[t]the exclusion of aliens is a fundamental act of sovereignty" that the Constitution entrusts to the political branches. *United States ex. Rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). "The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *Id.* Therefore, the Afghan Plaintiffs do not have a claim for which this Court can review.

The three remaining Plaintiffs, Mohammad Anoosh Azizi, Soraya Azizi, and Muzghan Ali (hereinafter "U.S. Plaintiffs"), do not have a claim that is ripe for suit. The only proper plaintiffs in this case would be "United States citizens [alleging] violations of their personal rights allegedly caused by the Government's exclusion of particular foreign nationals." *Trump v. Hawaii*, 585 U.S. at 698. However, no family members of the U.S. Plaintiffs have been excluded from the United States as of the filing of the Complaint. Compl. ¶ 68, 70, 74, 77; contrast *Trump v. Hawaii*, 585 U.S. at 698–99 ("an American individual who has 'a bona fide relationship with a particular person seeking to enter the country…can legitimately claim concrete hardship if that person is *excluded*'") (quoting *Trump v. IRAP*, 582 U.S. 571, 583 (2017)) (emphasis added). Therefore, because the Form I-131 parole applications of each Afghan Plaintiff are still pending, U.S. Plaintiffs do not have standing to sue for the legal injury of exclusion of relatives, since that has not occurred.

Finally, Plaintiffs' claim of a reliance interest is unsupported. Plaintiffs seem to claim their reliance interest formed from the extension of parole to other Afghans in the immediate aftermath of the August 2021 evacuation, which Plaintiffs summarily allege could only be explainable as a policy change and not an exigency of chaotic evacuation conditions. Compl. ¶¶ 40–41. But such reliance would be completely misplaced, as the award of a discretionary benefit to others under an unprecedented set of circumstances, such as a chaotic and hurried evacuation from

MOTION TO DISMISS

Kabul, does not create perpetual reliance interests. *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 346637 at *60 n.39 (D. Mass. May 12, 2023) ("[G]iven the unique nature and rarity of [humanitarian parole], the Court is not persuaded that it gives rise to reliance interests[.]"). Further, all U.S. Plaintiffs submitted Form I-131 parole applications for the Afghan Plaintiffs *after* the alleged policy change and Plaintiffs identify no basis for the belief that USCIS would continue to act as though it were assisting an evacuation long after the evacuation was over. *See* Compl. ¶ 68, 70, 74, 77. [7] Accordingly, Plaintiffs' claim of a "reliance interest" in alleged prior parole standards fails.

Plaintiffs cite *Dep't of Homeland Security v. Regents of the Univ. of Cal. ("Regents")*, 140 S. Ct. 1891, 1913 (2020), to claim that "it would be arbitrary and capricious to ignore" the "reliance interests" generated by old policies. Compl. ¶ 80. This argument fails to address the full quote in *Regents* and its implications. The full quote states that agencies must "be cognizant that *longstanding* policies may have 'engendered serious reliance interests that must be taken into account.'" *Regents*, 140 S. Ct. at 1913 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 212

---

[7] Plaintiff Mohammad Anoosh Azizi filed parole applications for Mohammad Walid Azizi and Nargis Ghafoori on or about September 19, 2021, and for Shahram Mohammad Azizi and Asayesh Azizi in December 2023. Plaintiff Soraya Azizi filed humanitarian parole applications for Azizalrahman Rahmani, Behesta Rahmani, and Husna Rahmani in September 2021. Plaintiff Muzhgan Ali filed a humanitarian parole application for Shadab Shahab in October 2021.

MOTION TO DISMISS

(2016)) (emphasis added). And Plaintiffs allege no "longstanding" prior policy that any Plaintiff relied on, they cite only the liberal award of parole to others during the evacuation as proof of a broad sweeping "policy." Compl. ¶¶ 40-42. At most, Plaintiffs vaguely argue that the Afghan parole policies to which USCIS must comport were developed on or about August 25, 2021. Compl. ¶ 34. A policy in place for a week cannot be deemed a "longstanding" policy that creates reliance interests in line with the definition in *Regents*.

Additionally, simply submitting a parole application would not create reliance interests. Per its definition, parole is a *discretionary* and may only be granted on a case-by-case basis. 8 U.S.C. § 1182(d)(5)(A). And courts in this circuit have said that "a liberal award of parole in the past… does not create a 'serious reliance interest' in being approved for parole[.]" *S.A. v. Trump*, 363 F. Supp. 3d 1048, 1086 (N.D. Cal. 2018); *see also Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) ("a government body's past practice of granting a government benefit is insufficient to establish a legal entitlement to the benefit."). Therefore, Plaintiffs cannot have a reliance interest in the speculation that "USCIS approved–or at least conditionally approved, subject to screening at a consulate–most if not all Afghan humanitarian parole applications adjudicated during that period [August 25, 2021 to September 1, 2021]." *See* Compl. ¶ 40. In fact, Plaintiffs allege that before the significant change in facts on the ground created by the withdrawal of U.S. forces

MOTION TO DISMISS

from Afghanistan in August 2021, USCIS only "approved approximately 500 to 700 [parole] applications each year—an approval rate of 25-35%." Compl. ¶ 32. Parole is and always has been too discretionary to create the reliance interest Plaintiffs allege. *S.A. v. Trump*, 363 F. Supp. 3d at 1085 ("[A]n application for parole that has not been approved does not engender a reliance interest").

### B. Parole adjudications are subject to agency discretion under 8 U.S.C. § 1182(d)(5)(A) and are thus unreviewable by the judiciary.

Section 702 of Title 5 of the U.S. Code confers a general cause of action upon persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute." That cause of action is withdrawn where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Both provisions apply in this case and act to make the pace of parole adjudications unreviewable.

Although Plaintiffs argue that "this action does not challenge the granting or denial of an individual application" and jurisdictional limitations do not apply, *See* Compl. ¶ 19, Plaintiffs also request that the Court "retain jurisdiction during the adjudication or re-adjudication of Plaintiffs' humanitarian parole applications." Compl., Prayer for Relief (E). However, judicial review is unavailable within the text of 8 U.S.C. § 1182(d)(5)(A), which commits the parole process to agency discretion. Here, there is no meaningful standard governing when, if ever, parole should be granted or in what order the agency is to exercise § 1182(d)(5)(A) parole

13

MOTION TO DISMISS

authority. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). No definition is provided for "urgent humanitarian reasons" or "significant public benefit" and the statute is silent as to the establishment of any process by which Defendants should accept or consider requests for parole. Even so, 8 U.S.C. § 1252(a)(2)(B)(ii) shows that Congress has explicitly precluded judicial review of "any other decision or action of the Attorney General." Therefore, it would be inappropriate for the Court to retain jurisdiction over agency actions in which it has no authority to review.

As the Supreme Court has recognized, 8 U.S.C. § 1252(a)(2)(B)(ii) is a "catchall provision" which, when read together with subclause (i), "convey[s] that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). Here, Congress has spoken, and the authority in the parole statute is clearly discretionary because 8 U.S.C. § 1182(d)(5)(A) states that "[t]he Attorney General *may . . . in his discretion* parole into the United States temporarily under such conditions as *he may prescribe* . . . any alien applying for admission to the United States . . .." (emphasis added). And as the Supreme Court has noted, "the word may *clearly* connotes discretion." *Bouarfa v. Mayorkas*, --- S.Ct. ----, 2024 WL 5048700, at *5 (2024) (citing *Biden v. Texas*, 597 U.S. 785, 802 (2022) (internal quotations omitted).

MOTION TO DISMISS

Other circuits[8] have recognized that this jurisdictional stripping provision applies not only to an approval or denial, as Plaintiffs' Complaint suggests, but to the entire pace of adjudications of parole by Defendants. *See Haydary v. Garland*, No. 4:24 CV 836 JMB, 2024 WL 4880406 (E.D. Mo. Nov. 25, 2024) (citing *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024) as controlling because "parole decisions are subject to a variety of factors considered by the USCIS – these decisions and actions (or inactions) are similar to the Adjudication Hold Policy" governed by 8 U.S.C. § 1252(a)(2)(B) of which the Court barred judicial review); *see also Ziae v. Garland, et al.*, No. 3:34-cv-1122-S-BT, Report and Recommendation at (N.D. Tex. Nov. 8, 2024) (adopted by District Court Judge in *Ziae v. Garland*, No. 3:24-cv-1122-S-BT, 2024 WL 5173318 (N.D. Tex. Dec. 19, 2024)) (the "broad language granting USCIS discretionary authority over Form I-131 adjudications is substantially similar to the language granting the government discretionary authority over Form I-485 adjudications….The Fifth Circuit has held that '§ 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review any discretionary decision or action rendered by the Attorney General'—including 'not only the ultimate decision to adjust an applicant's immigration status but also…the pace at which that process is undertaken.' *Cheejati*

---

[8] The Eastern District of California has also agreed that "courts may not review discretionary agency decisions" and "parole decisions are not subject to judicial review." *Al-Atri v. Lugo*, No. 1:20-CV-01556-JLT-EPG, 2024 WL 5238900, at *9 (E.D. Cal. Dec. 27, 2024).

MOTION TO DISMISS

*v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024) (citing *Bian v. Clinton*, 605 F.3d 249, 252–53 (5th Cir. 2010)).

Plaintiffs' Complaint discusses three cases to support its proposition that the pace of parole adjudications *is* reviewable by the Court. *See* Compl. ¶ 19. However, none are more persuasive than the recent decisions in the 5th and 8th circuits. *Uranga* limited the jurisdictional bar afforded by 8 U.S.C. § 1252 in an action challenging deportation proceedings, which is a vastly different process than parole. *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 97 (D.D.C. 2020). *Iddir* holds that agency action denying a Diversity Visa Program lottery winner without hearing the adjustment of status petition on the merits was not "discretionary," which is why § 1252(a)(2)(B) jurisdictional bars do not apply; the same cannot be said for this present litigation. *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002). And the court in *Liu*, a case involving an adjustment of status application, itself recognized that this issue is highly contested by courts across the country, and many have held that they lacked jurisdiction to hear claims about the pace of adjudications of discretionary decisions because of the language in 1252(a)(2)(B)(ii). *Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007). Thus, the pace of adjudications of parole by USCIS is unreviewable by the Court under the APA. *See* 5 U.S.C. § 702, 701(a)(1)-(2).

MOTION TO DISMISS

**C. Intermediate steps in the parole process are subject to agency discretion and are not "final actions," making them unreviewable by the judiciary.**

No text in 8 U.S.C. § 1182(d)(5)(A) requires USCIS to adjudicate or accept applications for parole. Because parole itself is discretionary, USCIS has complete discretion whether to issue RFEs and NOIDs or expedite applications as they are intermediate steps in the parole process. Plaintiffs challenge USCIS's alleged lack of issuance of RFEs/NOIDs and a failure to expedite applications in their Complaint, s*ee* Compl. ¶ 49, 67, 94, but these steps are unreviewable under the APA by the judiciary.

While 8 U.S.C. § 1182(d)(5)(A) requires that Defendants may only parole individuals who have demonstrated "urgent humanitarian reasons" or "a significant public benefit," doing so does not create an entitlement to parole, as it is ultimately a discretionary determination. Given that parole is fully discretionary, Plaintiffs cannot justify why the agency must expend resources to issue and review RFEs or NOIDs where there are no significant barriers to final adjudication. Regardless, the issuance, or non-issuance, of an RFE or NOID itself is a discretionary matter unreviewable under the APA. *See* 5 U.S.C. § 701(a)(2).

The USCIS Policy Manual directions with regards to RFEs and NOIDs states that "under the regulations, USCIS has the *discretion* to issue Requests for Evidence (RFEs) and Notices of Intent to Deny (NOIDs) for immigration benefit requests in

appropriate circumstances. USCIS also has the *discretion* in some instances to issue a denial without first issuing an RFE or a NOID" (emphasis added).[9] This language does not create a binding policy which creates a cause of action under the APA. *Sosa v. Barr*, 369 F. Supp. 3d 492, 505 (E.D.N.Y. 2019) ("it is clear from the plain language of [8 C.F.R. § 103.2(b)(8)] that USCIS is not required to send an RFE or NOID"); *see also Roe*, 2023 WL 346637 at *15, 18 (granting dismissal as to an alleged policy change by USCIS to refrain from issuing RFEs or NOIDs to Afghan applicants because issuance is a discretionary act by USCIS).

In addition, even if it were not discretionary, the issuance, or non-issuance, of an RFE or NOID is not a final agency action reviewable under § 704 of the APA. *Shihuan Cheng v. Baran*, No. CV 17-2001-RSWL-KSx, 2017 WL 3326451, at *7 (C.D. Cal. Aug. 3, 2017) (collecting cases). As further noted, "the issuance of the RFE does not create rights or obligations, nor do legal consequences flow from it because it is an intermediary step in the decision-making process regarding petitions and visas." *Id.* Therefore, "the issuance of the RFE cannot be understood as a 'final' action for purposes of the APA." *Id.*

The same is true with the decision to expedite a parole application. Per USCIS policy, "USCIS has sole discretion to decide whether to accommodate an expedite

---

[9] USCIS Policy Manual vol. 1, pt. E, ch. 6.F, https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-6; *see also* 8 CFR 103.2(b)(8).

MOTION TO DISMISS

request." *Supra* n.3. *And* like with RFEs, even if this act was not discretionary, it is not a final agency action subject to review under § 704 of the APA. Therefore, both the decision to issue RFEs and NOIDs, and the decision to expedite parole applications, are subject to agency discretion and are not "final actions," making them unreviewable by the judiciary.

> **D. Plaintiffs' lack standing to assert their FOIA claim because the request was not submitted on behalf of Plaintiffs, nor was it asserted against the correct Defendant.**

Only a requestor of FOIA records who is denied has standing to sue. *A Better Way for BPA*, 890 F.3d at 1186; *see also SAE Prods., Inc. v. F.B.I.*, 589 F.Supp. 2d 76, 79–82 (D.D.C. 2008) (dismissing FOIA claim on basis that plaintiff lacked standing to pursue judicial review because individual who made FOIA request did not clearly indicate that he was doing so on behalf of plaintiff corporation). Here, none of the eleven Plaintiffs in this litigation submitted the FOIA request on April 5, 2024, or had the request submitted on their behalf. Instead, the FOIA claim was unequivocally submitted by Plaintiffs' counsel, Prerna Lal, on their own behalf. Therefore, Plaintiffs do not have standing to sue for violation of FOIA.

In *A Better Way for BPA*, the court concluded that the Plaintiff organization, A Better Way for BPA, had standing to sue because its name was on the request form and the information included in the request made it clear the request was made on behalf of the organization. *A Better Way for BPA*, 890 F.3d at 1187. In contrast,

MOTION TO DISMISS

there is no mention of any Plaintiffs' names on the FOIA request submitted on April 5, 2024, and the request specifically discusses Lal's role as a member of both the media and an educational institution. *See* Compl., Ex. A at 6-7. In requesting a fee waiver, the FOIA request specifically states "Requestor, Prerna Lal," indicating this request was only on behalf of Plaintiffs' counsel. *Id.* at 6. Also, the request was made on April 5, 2024, months before this Complaint was even filed on October 28, 2024, making it unclear whether Lal represented Plaintiffs at that time. *Id.* at 5. Although Plaintiffs claim the FOIA request was submitted through counsel on behalf of Plaintiffs, *see* Compl. ¶ 64, there is no evidence submitted to support this claim nor any indication on the face of the request that this specific request has anything to do with the Plaintiffs in this litigation.

Finally, even if Plaintiffs were the requestors of this FOIA request, which it is clear they were not from the face of the request, they have asserted the claim against the incorrect Defendants. The Complaint names Alejandro N. Mayorkas and Ur M. Jaddou[10] in their official capacities. Compl. ¶ 12, 13. A FOIA case must be brought against an agency, and not individual defendants. *See, e.g.*, *Drake v. Obama*, 664 F.3d 774, 785 (9th Cir. 2011) (finding that "FOIA does not apply to any defendants as they are individuals, not agencies"); *Bettwieser v. Gans*, 715 F. App'x

---

[10] Now Secretary Kristi Noem and Acting Director Jennifer B. Higgins per Fed. R. Civ. P. 25(d).

MOTION TO DISMISS

767, 768 (9th Cir. 2018) ("individuals are not proper defendants in a FOIA…action"). Therefore, Count VII of Plaintiffs' Complaint alleging a violation of FOIA should be dismissed for lack of Article III standing, as well as because it was brought against the incorrect Defendants.

## II.    The Court should Dismiss the Complaint Under Rule 12(b)(6).

### A. Plaintiffs' allegations of "new standards" imposed by Defendants to Afghan parole decisions merely describe existing standards and thus raise no legal claim.

Plaintiffs claim that USCIS implemented new standards in violation of the APA under which:

> "(1) Applications of Afghans remaining in Afghanistan would be categorically denied or administratively closed; (2) Afghans outside of Afghanistan would no longer meet the urgent humanitarian reason prong of 8 U.S.C. § 1182(d)(5)(A), unless they either faced imminent harm in that country or an imminent risk of being returned to Afghanistan; and (3) with respect to Afghan applicants, USCIS would not enforce or abide by its written policy to require seeking additional information gathered through RFEs or NOIDs before issuing denials, even if there is a possibility that additional information will yield an approval."

Compl. ¶ 94. As to the first claimed "new standard," there was no new standard. Rather, Plaintiffs describe an existing policy in line with a regulation, 8 C.F.R. § 212.5(f), that Plaintiffs admit was in place before August 30, 2021. The second "new standard" is not new either, but rather a function of the difference in varying country conditions in third countries and/or the statutory limits in 8 U.S.C. § 1182(d)(5)(A). As to the third "new standard," Plaintiffs fail to credibly allege any new policy and

21

ignore the discretionary nature of the existing policy. Accordingly, Count III alleging notice and comment violations fails because Plaintiffs do not plausibly allege the existence of any new rule requiring notice-and-comment under 5 U.S.C. § 553. And even if Plaintiffs did allege a new rule, the Foreign Affairs exception applies.

> ### i. The first alleged "new standard" describes an existing regulation to administer travel documents to parole applicants at a U.S. embassy or consulate.

Plaintiffs allege that Defendants created a new standard requiring that "applications of Afghans remaining in Afghanistan [] be categorically denied or administratively closed." *See, e.g.*, Compl. ¶ 94. However, this "new standard" is not a new policy at all, but rather a change in the on-the-ground effects caused by the fall of Kabul and the closure of the U.S. embassy. The suspension of operations at U.S. Embassy Kabul in late August 2021 resulted in the suspension of in-country consular services necessary to the parole process.[11] A required step of parole, codified in 8 C.F.R. § 212.5(f), states that "[w]hen parole is authorized for an alien

---

[11] *Supra* n.5 ("At this time, the U.S. Embassy Kabul has suspended operations, including all consular services, and we cannot fully process requests for parole for individuals in Afghanistan…. If we determine that you are ineligible for parole, we will send your petitioner a denial notice. If you are currently in Afghanistan and we determine that you initially appear eligible for parole, we will send a Notice of Continued Parole Processing to your petitioner explaining that you must arrange your own travel outside of Afghanistan to a country where there is a U.S. embassy or consulate before we can fully process your parole request.").

MOTION TO DISMISS

who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel." USCIS requires a U.S. embassy or consulate abroad to collect biometrics and verify identify, prior to issuing an appropriate travel document in order to authorize CBP to inspect and parole at a port of entry in accordance with 8 C.F.R. § 212.5(f). *See supra* n.3. In the absence of a U.S. embassy or consulate in Afghanistan, USCIS therefore exercises its discretion to either deny parole or administratively close such requests and direct applicants to travel to another country with an operating U.S. consulate or embassy in order to complete processing of the parole requests.

In fact, Plaintiffs' Complaint confirms that USCIS adhered to this policy prior to August 31, 2021, and even acknowledges that an U.S. embassy or consulate with consular services is vital to USCIS's parole process. Compl. ¶¶ 33 ("When USCIS approves a application for humanitarian parole, a noncitizen generally must then travel to a U.S. consulate to be screened and interviewed."); 40 ("Until early September 2021, USCIS…instructed those grantees who were still in Afghanistan that completing the humanitarian parole process would require travel to a U.S. consulate."); 48 ("this [new standard] relied on the absence of a U.S. consulate in Afghanistan"). Given the suspension of U.S. Embassy Kabul's operations to issue travel documents, USCIS is limited in its ability comply to complete its adjudicative steps and issue travel documents pursuant to 8 C.F.R. § 212.5(f) as to applicants who

MOTION TO DISMISS

remain in Afghanistan. Therefore, Plaintiffs' claim of a "new standard" denying or administratively closing parole applications for individuals in Afghanistan was the only course of action to comply with regulations and continue to process applications. Additionally, Plaintiffs' request to order USCIS to reconsider Plaintiffs' applications as if the United States still had an operating Embassy in Afghanistan (or, as Plaintiffs put it, "in accordance with the standards in effect on August 31, 2021," *see* Compl., Prayor for Relief (A)) is to task the Court with ignoring the current realities on the ground.

> ii. *The second alleged "new standard" describes a pre-existing statutory limitation to only issue parole based on "urgent humanitarian interests or significant public benefit."*

Plaintiffs also allege that USCIS "instructed its adjudicators that applications filed on behalf of individuals who had already left Afghanistan could be approved only in extreme cases" and that "Afghans outside of Afghanistan would no longer meet the urgent humanitarian reason prong of 8 U.S.C. § 1182(d)(5)(A), unless they either faced imminent harm in that country or an imminent risk of being returned to Afghanistan." Compl ¶¶ 49, 94. However, this is not a "new standard," but rather a commitment by USCIS to comply with the parole requirements.

Congress has limited DHS's use of parole to cases where it is justified by urgent humanitarian interests or significant public benefit. 8 U.S.C. § 1182(d)(5)(A). While the circumstances that lead parole applicants to flee their country of

MOTION TO DISMISS

citizenship are often dire, it is possible that applications may often lose their "urgency" once the applicant has escaped to a safer third country and could likely await routine refugee processing or normal visa processing procedures in that third country. USCIS considers the totality of the circumstances when determining if a parole applicant satisfies the requirements of 8 U.S.C. § 1182(d)(5)(A). *Supra* n.3 ("A USCIS officer considers each request and the evidence provided on a case-by-case basis, taking into account all of the circumstances. . .Parole is not intended to be used solely to avoid normal visa processing procedures and timelines, to bypass inadmissibility waiver processing, or to replace established refugee processing channels."). USCIS's consideration of whether an applicant no longer has an urgent humanitarian reason to travel to the United States is appropriate to comport with 8 U.S.C. § 1182(d)(5)(A). Plaintiffs do not explain how using parole in the manner described by the statute is unlawful.

### iii. The third alleged "new standard" points to no change in prior policy and is nonetheless discretionary.

Plaintiffs allege that USCIS issued a "new standard" that "with respect to Afghan applicants, USCIS would not enforce or abide by its written policy to require seeking additional information gathered through RFEs or NOIDs before issuing denials, even if there is a possibility that additional information will yield an approval." Compl. ¶ 94. However, as discussed in Section I.C. of this Motion, the issuance of RFEs and NOIDs is up to the discretion of Defendants. Additionally,

25

MOTION TO DISMISS

Defendants made no changes to the RFE/NOID rules post-August 31, 2021. The USCIS Policy Manual encourages, but does not nor did *require*, officers to issue RFEs or NOIDs when eligibility is in doubt. *Supra* n.9. DHS is not, and never was, required to continuously solicit evidence until it exercises parole discretion favorably, nor does 8 U.S.C. § 1182(d)(5)(A) require DHS to issue RFEs/NOIDs before declining parole to applicants.

> iv. *Even if the alleged new rules were of a nature that required notice-and-comment, the Foreign Affairs exception would apply.*

Even if there were any "new standards" as alleged, they would be exempt from any requirement for notice and comment. "In general, the APA requires federal agencies to publish notice of proposed rules in the Federal Register and then allow 'interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 775 (9th Cir. 2018) (quoting 5 U.S.C. § 553(c)). "Under the foreign affairs exception, the APA's notice-and-comment procedures do not apply 'to the extent that there is involved— a . . . foreign affairs function of the United States.'" *Id.* (quoting 5 U.S.C. § 553(a)(1)). "[C]ourts have approved the Government's use of the foreign affairs exception where the international consequence is obvious[,]" *Id.* at 776, or where undergoing notice and comment would provoke "definitely undesirable international consequences." *Yassini v. Crosland*, 618 F.2d 1356, 1360 n. 4 (9th Cir. 1980).

MOTION TO DISMISS

The "quintessential foreign affairs functions such as diplomatic relations and the regulation of foreign missions are different" than pure immigration law rules "that only indirectly implicate international relations[.]" *City of N.Y. v. Perm. Mission of India*, 618 F.3d 172, 202 (2d Cir. 2010). The suspension of consular services is not a simple immigration function: it is the suspension of a quintessential foreign affairs function. *See id*. Defendants' responses to the suspension of operations and consular services at U.S. Embassy Kabul, and the resulting impacts on USCIS's ability to complete parole processing for applicants within, and outside, of Afghanistan, would fall squarely within the foreign affairs exception. Even if there was a change in policy, this change would have occurred in the context of a rapidly evolving security situation involving military operations, efforts to assist as many employees, contractors, U.S. citizens and Afghan nationals as possible, and under an impending deadline for withdrawal. As Plaintiffs themselves note in their Complaint, Defendants had to respond quickly to a situation that was chaotic and fast moving, leading to the deaths of U.S. and Afghan citizens alike. Compl. ¶ 22.

"Hindering" the Executive's "ability to implement a new policy in response to a current foreign affairs crisis" can "warrant[] invocation of the foreign affairs exception." *E. Bay*, 932 F.3d at 776. The alleged decisions relating to parole policy, even if true and even if amounting to legislative rules, would fall under the foreign affairs exemption to the APA's notice-and-comment requirements because

27

completing notice-and-comment in late August 2021 would have impeded the Executive's ability to respond quickly to an evident crisis. *See also Roe*, 2023 WL 346637 at *17 (holding that the Foreign Affairs exception applies in this context because "T[t]here can be no doubt that the sudden withdrawal of U.S. troops from Afghanistan was a matter of great international consequence or that the closure of the U.S. Embassy implicated foreign diplomacy.").

          *v. Following the parole statute as written is not "impermissible."*

Plaintiffs allege that USCIS issued these "new standards" because it realized "that many Afghans would qualify for humanitarian parole" and with "the desire for a standard that would lead to more denials, and the desire to deter more applicants." Compl. ¶ 85. Even if USCIS did issue "new standards," these considerations are not "impermissible."

A court can set aside agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When determining if the agency considered "impermissible" factors when creating a new policy, courts look at, generally, whether the agency's action was reasonable. *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009). Even if there was a "new policy" created under considerations such as to deter applicants and lead to more denials, of which Defendants do not concede, these considerations would not be arbitrary or capricious. Parole as described in 8 U.S.C. § 1182(d)(5)(A) is not meant

MOTION TO DISMISS

to be a "regularly-travelled alternate route for entry into the United States" in lieu of refugee processing. *Amanullah v. Nelson*, 811 F.2d 1, 12 (1st Cir. 1987) (citing *INS v. Stevic*, 467 U.S. 407, 425 (1984)). Parole is *discretionary* and *case-by-case*, and USCIS considering the purposes of parole in its decision-making post-Fall 2021 as it received an unprecedented surge in applications would not be "impermissible." As such, this speculative motive would not give rise to a cognizable claim.

### B. Plaintiffs' claims fail because the purported delay since the parole applications were submitted is not unreasonable.

Even if Defendants had a non-discretionary duty to adjudicate parole applications in a certain time frame, the present delay of Plaintiffs' parole applications is not unreasonable. To determine whether an agency's delay is unreasonable under the APA, the Court looks at:

> ""(1) the time agencies take to make decisions must be governed by a 'rule of reason[';] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'""

MOTION TO DISMISS

*Vaz*, 33 F.4th at 1137 (citing *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("TRAC")). Here, these factors weigh in Defendants favor.[12]

First, the delay is not unreasonable, making the first factor weigh in Defendants' favor. As Plaintiffs allege, "[b]efore August 2021, [the Humanitarian Affairs Branch] had a small number of adjudicators, who processed fewer than 2,000 applications per year on behalf of noncitizens from all over the world." Compl. ¶ 32. And "[e]ven accounting for a period in which USCIS was ramping up its staffing and assuming that around 2,000 applications have been adjudicated in a five-month period from December through April, USCIS would require more than seven years to process over 40,000 pending Afghan humanitarian parole applications." *Id.* ¶ 57. Notwithstanding Plaintiffs' conjecture about prospective adjudication timelines, none of the Plaintiffs' applications have been pending more than four years, many significantly less than that. *See* Compl. ¶¶ 66–77. Even accepting Plaintiffs' estimations, which Defendants do not concede are factually accurate and which discount non-Afghan applicants, ten months to three years of processing does not break the "rule of reason." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336

---

[12] It is not inappropriate to address the *TRAC* factors at the Motion to Dismiss stage. *See Vaz v. Neal*, No. 2:20-CV-00316-KJD-NJK, 2021 WL 117295933 Z, at *2 (D. Nev. Mar. 26, 2021), *aff'd sub nom. Vaz v. Neal*, 33 F.4th 1131 (9th Cir. 2022) (determining that a delay was not unreasonable under the APA based on the *TRAC* factors at the Motion to Dismiss stage).

MOTION TO DISMISS

F.3d 1094, 1102 (D.C. Cir. 2003) (declining to find undue delay after four and a half year adjudication delay); *Singh v. Napolitano*, 909 F.Supp.2d 1164, 1176 (E.D. Cal. 2012) (finding that four years was reasonable and "reflective of a rule of reason").

The second factor weighs in Defendants' favor, as 8 U.S.C. § 1182(d)(5)(A) does not contain any text that requires Defendants to adjudicate parole in a specific timeframe. And while Plaintiffs may desire faster adjudications, the weight of the humanitarian consideration at stake, the third factor, is mitigated by the fourth factor. An order compelling Defendants to adjudicate these Plaintiffs' filings ahead of others would usurp the agency's discretion to assess the "urgent humanitarian reasons" presented on a case-by-case basis. 8 U.S.C. § 1182(d)(5)(A). As such, Plaintiffs have not shown entitlement to a writ of mandamus compelling the agency to prioritize them higher than others who applied for parole. *Mashpee*, 336 F.3d at 1100 ("[W]e [have] refused to grant relief, even though all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.") (original brackets omitted). DHS simply has no non-discretionary duty to move Plaintiffs' Form I-131s to the front of the line, and ahead of others potentially in equally dire or worse circumstances. The Court is also ill-poised to rule whether Plaintiffs' considerations should outweigh those of other applicants not before the Court.

The fifth factor also weighs in favor of Defendants because Plaintiffs are not prejudiced by the withholding of something to which they were never legally entitled or have yet to face a legal injury from. *Supra* Section I.A. Finally, the sixth factor weighs in Defendants' favor because the alleged delay, to the extent it is a delay at all, is due to an unprecedented surge in applications, not procrastination or internal inefficiency. Per Plaintiffs' own conjectures, "[b]efore August 2021, the Humanitarian Affairs Branch] had a small number of adjudicators, who processed fewer than 2,000 applications per year on behalf of noncitizens from all over the world," Compl. ¶ 32, who now have to contend with "over 40,000 pending Afghan humanitarian parole applications." Compl. ¶57. And this calculation by Plaintiffs does not include parole requests from individuals of other nationalities which the USCIS' Parole Operations also must process. Therefore, taking each of these factors into account, the "delay" that Plaintiffs allege is not unreasonable under the APA and does not warrant a writ of mandamus.

## **<u>CONCLUSION</u>**

For the above reasons, Defendants ask that the Court GRANT its Motion to Dismiss and dismiss Plaintiffs' entire Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

MOTION TO DISMISS

Dated: January 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation

YAMILETH G. DAVILA
Assistant Director

/s/ *Jaime A. Scott*
JAIME A. SCOTT (DC #90027182)
Trial Attorney
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-3620
Jaime.A.Scott@usdoj.gov

*Attorneys for Defendants*

33

## CERTIFICATE OF SERVICE

I hereby certify that this document filed was filed through the CM/ECF software on January 29, 2025. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Respectfully Submitted,

*/s/ Jaime A. Scott*
Jaime A. Scott
Trial Attorney
United States Department of Justice
Office of Immigration Litigation

*Attorney for Defendants*

34