1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MOHAMMAD ANOOSH AZIZI, *et al.*,          Case No.  2:24-cv-2959-JDP

12               Plaintiffs,

13        v.                                    ORDER

14   KRISTI NOEM, *et al.*,

15               Defendants.

16

17        Plaintiffs, a group of eight Afghan nationals and three U.S. citizen family members,

18   brought this action against defendants Alejandro Mayorkas, the former Secretary of Homeland

19   Security, and Ur M. Jaddou, former Director of Citizenship and Immigration Services.  Those

20   individuals are no longer at those posts; the appropriate defendants are now Kristi Noem and

21   Jennifer B. Higgins.  I will direct the Clerk of Court to substitute their names on the docket.

22   Plaintiffs' complaint has seven counts:

23        (1)      Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706,

24   by taking arbitrary and capricious agency action by implementing, without public notice, new

25   adjudicative standards for Afghan humanitarian parole applications, making it "all but

26   impossible" for applicants obtain this benefit.  ECF No. 1 at 18-20.

27        (2)      Defendants violated the APA, 5 U.S.C. § 706, by failing to comply with the law

28   and agency rules when they replaced the required case-by-case adjudication with a categorical

                                              1

rule refusing to approve parole applications for Afghans located in Afghanistan.  ECF No. 1 at 20-21.

(3)    Defendants violated the APA, 5 U.S.C. § 553, by failing to provide notice and to allow for comment before implementing the new standards governing Afghan humanitarian parole. *Id.*

(4)    Defendants violated the APA, 5 U.S.C. § 706, by unreasonably delaying adjudication of plaintiffs' and their family members' parole applications.

(5)    Plaintiffs are entitled to relief under The Mandamus Act, 28 U.S.C. § 1361. *Id.* at 23.

(6)    Plaintiffs are entitled to declaratory judgment under 28 U.S.C. § 2201. *Id.* at 23-24.

(7)    Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(3)(A), in failing to conduct a reasonable search in response to plaintiffs' request. *Id.* at 24.  Defendants have filed a motion to dismiss, ECF No. 15, plaintiffs have opposed it, ECF No. 16, and defendants have filed a reply, ECF No. 17.  I will grant defendants' motion in part.

**Legal Standard**

A complaint may be dismissed for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light

1    most favorable to the nonmoving party.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710

2    F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

3    Dismissal under Rule 12(b)(6) can be based on either: (1) a lack of a cognizable legal theory, or

4    (2) insufficient facts under a cognizable legal theory.  *Chubb Custom Ins. Co.*, 710 F.3d at 956.

5    Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim.

6    *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

7                                                 **Background**

8           Plaintiffs are Afghan citizens and United States-based family members who have

9    petitioned U.S. Citizenship and Immigration Services ("USCIS") for humanitarian parole, either

10   for themselves or on behalf of family members.  ECF No. 1 at 2-4.  They have sued defendants

11   Kristi Noem, Secretary of Homeland Security, and Jennifer B. Higgins, acting Director of

12   Citizenship and Immigration Services, in their official capacities.

13          In August 2021, the United States withdrew from Afghanistan, and, soon after, the

14   Taliban returned to power.  *Id.* at 6.  Threatened with repression and reprisal, thousands of

15   Afghans and certain family members acting on their behalf sought humanitarian parole from the

16   United States.  *Id.* at 6-7.  The Immigration and Nationality Act authorizes the Secretary of

17   Homeland Security "to parole any [noncitizen] into the United States temporarily under such

18   conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or

19   significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  Non-citizens granted parole may enter the

20   country temporarily, during which time they may apply for asylum.  ECF No. 1 at 8.  Plaintiffs

21   allege that for a brief time following the U.S. withdrawal—until approximately September

22   2021—USCIS adjudicated Afghan parole applications within a reasonable period of time.  *Id.* at

23   10.  Faced with an avalanche of applications, however, the agency paused grants of parole for

24   Afghans from September to November 2021.  *Id.* at 11.  USCIS then allegedly adopted, without

25   public notice or an opportunity for comment, new standards governing grants of parole to

26   Afghans.  *Id.*

27          The new standards allegedly directed that no parole was to be granted for applicants still

28   in Afghanistan.  *Id.*  Instead, those applicants received either denials or notices that their

                                                 3

1  applications were to be administratively closed until such time as they left Afghanistan. *Id.*

2  Plaintiffs allege that this standard "relied" on the absence of a U.S. consulate in Afghanistan,

3  which was now under the control of the Taliban. *Id.* at 11-12. Additionally, the standards

4  allegedly directed adjudicators to grant parole to Afghans *outside* Afghanistan only in the most

5  exigent circumstances. *Id.* at 12. Plaintiffs allege that applicants were not notified of these new,

6  near-impossible-to-satisfy standards. *Id.* Additionally, plaintiffs allege that after the institution of

7  these new standards, adjudicators failed to process applications within a reasonable time. *Id.* at

8  12-13.

9       In April 2024, plaintiffs' counsel submitted a FOIA request to USCIS seeking "aggregate

10  data and statistics related to humanitarian parole applications for Afghanistan citizens and

11  nationals." *Id.* at 15. Plaintiffs allege that the deadline for responding to their request has passed,

12  and, to the present day, they have received no response. *Id.*

13                                          **Analysis**

14       Defendants move to dismiss the complaint. First, they argue that the complaint should be

15  dismissed under Rule 12(b)(1) because: (1) the non-citizen plaintiffs lack standing; (2) parole

16  adjudications are unreviewable by the judiciary; (3) intermediate steps in the parole process are

17  not "final actions" and are, thus, unreviewable by the judiciary; and (4) plaintiffs lack standing to

18  pursue their FOIA claim because the claim was submitted neither on their behalf nor to the

19  correct defendant. Second, defendants argue that the complaint should be dismissed under

20  12(b)(6) because: (1) the claims regarding "new standards" for parole merely describe existing

21  standards and, thus, raise no actual claims; (2) even if there were new standards, the foreign

22  affairs exception relieves defendants of any obligation to comply with the APA's notice

23  requirements; and (3) the delay in adjudicating the relevant parole applications was not

24  unreasonable. The motion should be granted in part.

25       **I.    Standing**

26       Defendants contend that Mohammad Walid Azizi, Nargis Ghafoori, Shahram Mohammad

27  Azizi, Asayesh Azizi, Azizalrahamn, Rahmani, Behesta Rahmani, Husna Rahmani, and Shadab

28  Shahab—all non-citizens—lack standing because an unadmitted foreign national has no right to

                                            4

enter the United States.  This argument is, at this stage, easily disposed of, because the three

plaintiffs who are U.S. citizens (Muzghan Ali, Soraya Azizi, and Mohammad Anoosh Azizi) do

have standing.  *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("There are

three groups of plaintiffs in this litigation . . . Because we find California has standing, we do not

consider the standing of the other plaintiffs."); *see also J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C.

Cir. 2019) ("It is settled that in a case involving joined, individual plaintiffs bringing a shared

claim seeking a single remedy, Article III's case-or-controversy requirement is satisfied if one

plaintiff can establish injury and standing.").

Defendants argue that the three U.S. citizens also lack standing because, as of yet, their

family members' applications have not been denied, and the relevant individuals have not been

excluded from the United States.  ECF No. 15-1 at 16.  I disagree.  The citizen plaintiffs have

sufficiently alleged injury at this point, in alleging that (1) their family members have been denied

timely parole adjudication, (2) the procedures governing those adjudications were not

implemented properly, and (3) their family members have been exposed to a risk of harm while

their applications languish.  ECF No. 16 at 13-14.

## II.    Reviewability of Parole Adjudications

Defendants cite Section 701(a) of the APA, noting that it prohibits judicial review

where "statutes preclude judicial review" or where "agency action is committed to agency

discretion by law."  5 U.S.C. §§ 701(a)(1)-(2).  They argue that both sections apply and prohibit

judicial review of plaintiffs' claims.  ECF No. 15-1 at 19.  Section 1182(d)(5)(A) of the

Immigration and Nationality Act ("INA") provides that the Attorney General may in her

"discretion parole into the United States temporarily under such conditions as [s]he may prescribe

only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any

alien applying for admission to the United States[.]"  8 U.S.C. § 1182(d)(5)(A).  Defendants read

this provision in conjunction with 8 U.S.C. § 1252(a)(2)(B)(ii) for the proposition that the

decision at issue is the sort of discretionary decision whose review is barred because "Congress

itself set out the Attorney General's discretionary authority in the statute."  *Kucana v. Holder*,

558 U.S. 233, 247 (2010).

I determine that plaintiffs' claims are reviewable.  Defendants are correct that § 1252(a)(2)(B)(ii) bars judicial review of individual parole decisions, but other courts have found that "[w]hile § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018); *see also Doe v. Mayorkas*, 530 F. Supp. 3d 893, 909 (N.D. Cal. 2021) ("[W]hile it is true that there is no judicial review for individual visa or refugee applications, this denial of judicial review 'does not apply to challenges to immigration policies.'").  And the exception to reviewability contained in § 701(a)(2) has historically been narrowly drawn.  *See Weyerhaeuser Co. v. United States Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) ("A court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable.  To give effect to § 706(2)(A) and to honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").  To be sure, defendants argue that there is no meaningful standard here, but I disagree.  In *Biden v. Texas*, the Supreme Court held that "DHS may exercise its discretion to parole applicants only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.  And under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained."  597 U.S. 785, 806-807 (2022) (internal quotation marks and citations omitted).

### III.    Reviewability of Intermediate Steps in the Parole Process

Defendants next argue that the issuance or non-issuance of Requests for Evidence ("RFE") and Notices of Intent to Deny ("NOID"), and decisions whether to expedite a parole application, are not final agency actions susceptible to judicial review.  For an action to be "final" within the meaning of the APA, it must satisfy two conditions: "[f]irst, the action must mark the consummation of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]"  *Bennett v. Spear*, 520 U.S. 154,

1    177-78 (1997) (internal citations and quotations omitted).  *See Or. Natural Desert Ass'n v. United*

2    *States Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("In determining whether an agency's

3    action is final, we look to whether the action amounts to a definitive statement of the agency's

4    position or has a direct and immediate effect on the day-to-day operations of the subject party, or

5    if immediate compliance [with the terms] is expected.") (internal quotation marks omitted).  Here,

6    plaintiffs allege, and for the purposes of this motion I accept, that the new standards are

7    definitive.  Additionally, the new standards have allegedly been in place since 2021, suggests that

8    they are not tentative.  *See Portland Cmty. Coll. v. United States VA*, No. 3:21-cv-01658-AR,

9    2023 U.S. Dist. LEXIS 32979, at *20-21 (D. Or. Jan. 24, 2023) ("The VA's failure to provide the

10   SLP for more than three years despite PCC's persistent demands is certainly not an interim,

11   tentative, or interlocutory agency position.").  And the second factor is satisfied because plaintiffs

12   allege that those standards have effectively made parole for them or their family members

13   impossible.  The complaint mentions RFEs and NOIDs in this context, arguing that defendants'

14   standards have substituted a rule of categorical denial for the prior case-by-case determination

15   system, in which RFEs and NOIDs were employed.  ECF No. 1 at 21.  I decline to dismiss any of

16   plaintiffs' claims on this basis.

17                    **IV.    Standing to Assert FOIA Claims**

18           Defendants contend that plaintiffs do not have standing to bring their FOIA claim

19   because the request at issue was submitted by counsel, Prerna Lal, on their behalf.  Plaintiffs state

20   that they oppose this argument but also state that they "defer to the Court's discretion."  ECF No.

21   16 at 30.  They allege that, although counsel made the request, plaintiffs are the real parties in

22   interest, and they argue that defendants are best positioned to file the record to support their

23   claim.  Plaintiffs identify no authority supporting the proposition that someone other than the

24   individual making the FOIA request has standing to bring a claim.  I agree with defendants that

25   plaintiffs do not have standing to pursue their FOIA claims in this case and will dismiss those

26   claims without prejudice on that basis.  *See Osterman v. United States Army Corps of Eng'rs*,

27   NO. CV13-1787-BJR, 2014 U.S. Dist. LEXIS 154058, at *4 (W.D. Wash. Oct. 30, 2014) ("This

28   means that the individual who made the FOIA request is the only individual who has standing to

1 challenge an agency's response to that request.").

2                              **V.      Novelty of the Standards**

3          Defendants argue that plaintiffs' claims regarding the "new" standards for Afghan parole

4 Applicants should be dismissed because those claims "merely describe existing standards."  ECF

5 No. 15-1 at 27.  There are three standards at issue:

6               (1) Applications of Afghans remaining in Afghanistan would be
                categorically denied or administratively closed; (2) Afghans outside
7               of Afghanistan would no longer meet the urgent humanitarian
                reason prong of 8 U.S.C. § 1182(d)(5)(A), unless they either faced
8               imminent harm in that country or an imminent risk of being
                returned to Afghanistan; and (3) with respect to Afghan applicants,
9               USCIS would not enforce or abide by its written policy to require
                seeking additional information gathered through RFEs or NOIDs
10              before issuing denials, even if there is a possibility that additional
                information will yield an approval.
11

12 ECF No. 1 at 22.  Defendants allege that none are "new."

13         First, they contend that the denial or administrative closing of applications of Afghans

14 remaining in Afghanistan was not a new standard, "but rather a change in the on-the-ground

15 effects caused by the fall of Kabul and the closure of the U.S. embassy."  ECF No. 15-1 at 28.

16 Plaintiffs counter that their allegations "do not merely allege a change in the 'on-the-ground

17 effects' caused by the fall of Kabul or the closure of the U.S. Embassy.  Rather, they allege that

18 defendants implemented a new policy to categorically deny or administratively close parole

19 applications for Afghans remaining in Afghanistan after the filing of many parole applications."

20 ECF No. 16 at 37.  At this juncture, I take plaintiffs' allegations as true and so reject defendants'

21 argument.  *See Ashcroft*, 556 U.S. at 678.  At least one other court has found that an identical

22 argument was "fundamentally challenging Plaintiffs' characterization of why Afghan parole

23 applications were not being granted in the fall of 2021, which is precisely the type of dispute that

24 . . . is not suited to resolution without the administrative record."  *Roe v. Mayorkas*, No. 22-cv-

25 10808-ADB, 2023 U.S. Dist. LEXIS 84440, at *37 (D. Mass. Apr. 28, 2023).

26         Second, defendants argue that the direction that adjudicators not approve parole for

27 Afghans outside of Afghanistan "unless they either faced imminent harm in that country or an

28 imminent risk of being returned to Afghanistan" was not a new standard; rather it was a

                                                 8

"commitment by USCIS to comply with the parole requirements." ECF No. 15-1 at 30. This argument ignores the substance of plaintiffs' claim. Plaintiffs allege that, previously, adjudicators evaluated Afghan parole applications on a case-by-case basis. ECF No. 16 at 40. The new standard is one of categorical denial. To the extent defendants allege that case-by-case evaluations continue, that is a factual dispute unsuited to resolution on a motion to dismiss.

Third, defendants argue that plaintiffs' allegation that adjudicators were directed to disregard a written policy requiring them to seek additional information gathered through RFEs or NOIDs before issuing denials implicates only discretionary actions, which are not subject to court review. ECF No. 15-1 at 31-32. Here again, the argument ignores the nuance of plaintiffs' claims. Plaintiffs allege that prior to the institution of the new standards, adjudicators were encouraged to gather additional information through RFEs or NOIDs when an application did not establish current eligibility, but where additional information might. ECF No. 16 at 41-42. The new standard, however, allegedly imposed a total pause on issuing RFEs and NOIDs for Afghan applicants, even in cases in which soliciting those items might have established eligibility. *Id.*

## VI.    Foreign Affairs Exception

Defendants argue that to the extent there are new standards, those standards are exempt from the APA's notice and comment procedures because they fall within the foreign affairs exception. ECF No. 15-1 at 36. "In general, the APA requires federal agencies to publish notice of proposed rules in the Federal Register and then allow interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 775 (9th Cir. 2018) (internal quotation marks omitted). However, "[u]nder the foreign affairs exception, the APA's notice-and-comment procedures do not apply 'to the extent that there is involved—a . . . foreign affairs function of the United States.'" *Id.* (quoting 5 U.S.C. § 553(a)(1)). While immigration is unquestionably intertwined with foreign affairs, the Court of Appeals has held that "the foreign affairs exception applies in the immigration context only when ordinary application of 'the public rulemaking provisions [will] provoke definitely undesirable international consequences.'" *Id.* at 775-76 (quoting *Yassini v. Crosland*, 618 F.2d 1356, 1360

n.4 (9th Cir. 1980)) (modification in original).  Under this standard, courts have approved the use

of the exception "where the international consequence is obvious or the Government has

explained the need for immediate implementation of a final rule" and disapproved its use "where

the Government has failed to offer evidence of consequences that would result from compliance

with the APA's procedural requirements."  *E. Bay Sanctuary Covenant*, 992 F.3d at 776.

Here, defendants' argument is appealing at first blush.  They argue that the suspension of

operations and consular services at the U.S. embassy in Kabul falls within the exception, and that

any policy change regarding parole "would have occurred in the context of a rapidly evolving

security situation involving military operations, efforts to assist as many employees, contractors,

U.S. citizens and Afghan nationals as possible, and under an impending deadline for withdrawal."

ECF No. 15-1 at 33.  As plaintiffs point out, however, the domestic adjudication of Afghan parole

applications is not so fundamentally intertwined with the United States' withdrawal from

Afghanistan as to make it clear that allowing notice and comment on changing parole standards

would provoke undesirable international consequences.  Defendants argue that the suspension of

consular services impacted USCIS's ability to complete parole processing for Afghan applicants,

both inside and outside of Afghanistan, but they offer no specifics.  Concededly, it makes

intuitive sense that the closure of the embassy in a country would affect parole applications from

its citizens, but, without specific explanation as to the negative consequences, I am unwilling to

find that the exception applies.  It bears emphasis that my ruling does not foreclose possible

application of the exception.  Rather, it is not currently apparent, based on the pleadings and

absent any meaningful evidentiary record, that it should apply.

## VII.    Following the Parole Statute as Written

Defendants argue that, even if new standards were issued as plaintiffs allege, a desire to

deter more Afghans from applying for parole and a higher rate of parole denial for those that did

were not impermissible changes.  ECF No. 15-1 at 34.  "The APA's arbitrary-and-capricious

standard requires that agency action be reasonable and reasonably explained."  *FCC v.*

*Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Here, plaintiffs allege, and for the

purposes of this motion I take as true, that defendants were not motivated by a legitimate desire to

10

1  advance the humanitarian, statutory purpose of the parole statute, U.S.C. § 1182(d)(5)(A), but by

2  an impermissible desire to "prioritize[e] administrative convenience and deterrence," regardless

3  of humanitarian cost.  ECF No. 16 at 47.  The matter might be different if defendants argued that

4  the imposition of this deterrent enabled some other humanitarian benefit and thus was a

5  reasonable, if difficult, choice motivated by the purpose of the statute.  They do not, however, and

6  the argument they do make is unavailing.

7                    **VIII.   Reasonableness of the Delay**

8        Lastly, defendants argue that, taking the allegations in the complaint as true, the delay in

9  adjudicating Afghan humanitarian parole applications has been reasonable.  "Resolution of a

10  claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration

11  of the particular facts and circumstances before the court."  *Mashpee Wampanoag Tribal Council,*

12  *Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).  Thus, arguments as to whether an agency's

13  delay is reasonable should not be resolved at the motion to dismiss stage.  *See Gelfer v. Chertoff*,

14  No. C 06-06724 WHA, 2007 U.S. Dist. LEXIS 26466, at *6 (N.D. Cal. Mar. 22, 2007) ("On this

15  motion to dismiss, it is premature to consider the exact sources of the delay to determine whether

16  the delay was actually unreasonable under the circumstances."); *Garcia v. Johnson*, No. 14-cv-

17  01775-YGR, 2014 U.S. Dist. LEXIS 164454, at *41 (N.D. Cal. Nov. 21, 2014) ("Regardless, if

18  the TRAC factors are to apply, the Court cannot resolve at this juncture whether plaintiffs have

19  met this fact-intensive test."); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 54 (D.D.C. 2008)

20  ("While the court has jurisdiction over USCIS, the determination of whether an agency's delay is

21  unreasonable is a fact specific inquiry that is premature at this stage of the proceedings.").

22

23

24

25

26

27

28

Accordingly, it is ORDERED that:

1.      The Clerk of Court shall substitute Kristi Noem and Jennifer B. Higgins as defendants.  Alejandro Mayorkas and Ur M. Jaddou shall be terminated as parties to this action.

2.      Defendants' motion to dismiss, ECF No. 15, is GRANTED in part.  Plaintiffs' FOIA claims are dismissed without prejudice.  The motion is denied in all other respects.

IT IS SO ORDERED.

Dated:    September 12, 2025                            _____

                                                        JEREMY D. PETERSON
                                                        UNITED STATES MAGISTRATE JUDGE